New Jersey Department of Labor,
Workmen's Compensation Bureau.

RAYMOND JOHNSEN, PETITIONER, v. STANDARD CAP AND SEAL CORPORATION, RESPONDENT.

Decided April 12th, 1938.

For the petitioner, *Lichtenstein, Schwartz & Friedenberg* (by *Howard Engel*).

For the respondent, *Cox & Walburg* (by *Arthur Mead*).

A formal petition having been filed in the above matter, claiming compensation by the petitioner against the respondent under and by virtue of the terms of the Workmen's Compensation act of New Jersey, with supplements and amendments thereto, and an answer having been duly filed and the case being noticed for trial, and the parties appearing before me at Jersey City, and testimony being taken in my presence on February 18th, March 9th, March 16th and March 23d, 1938, I find and determine as follows:

1. The petitioner testified that while working for the respondent on February 14th, 1936, he sustained an accident while taking a heavy roll of cardboard from a truck. He was struck in the region of the right groin and felt a sharp pain, and after a few minutes, continued to work and worked approximately an hour and a half, when he stopped work and went home. He did not go to work the following day, which was Saturday, and when he awoke that day, he noticed, in the region of the right groin, a swollen condition, and felt sharp pain, so that he was unable to arise without great pain. He showed his father the condition, and remained at home that day and Sunday. On the following day, Monday, he

reported the accident and was sent to the company doctor, who examined and treated him, but a further condition developed so that he was eventually sent to New York, where he was operated upon by Dr. Greenberger at the Manhattan General Hospital. After leaving the hospital, he received treatment from Dr. Greenberger, and when finally discharged from treatment, he returned to the respondent's plant for work, but was sent to a Dr. Klemes, who, in turn, sent him to the Yorkville Clinic of the New York City board of health for examination. Subsequently, he was sent to the board of health clinic in Bay Ridge for examination, and eventually, on July 12th, 1937, he was sent to the Kingston Avenue Hospital, in Brooklyn, New York. He stated that previous to his accident, he was athletic, active and in good health, and at one time was enrolled in a military camp. He stated that in the spring of 1936, he commenced losing weight, lost his appetite and energy, and perspired easily, and also developed a cough; in the summer, he felt weak in addition to having the other symptoms, so that he would go to the beach in the afternoon and lie in the sun, sleeping, most of the time. He stated that in November and December of 1936, he obtained some work before Christmas in a department store in Brooklyn, but did not work steadily, and one day noticed a pain and swelling on the left side of his groin, which seemed to him similar to that which he had on the right side immediately after the accident. He further stated that he again had developed a cough at this time, and when the condition appeared on his life side, he sought medical aid, and eventually, he was sent to the Kingston Avenue Hospital, from which he was discharged on February 10th, 1938. He states that now his appetite and weight are better, and that he does not feel so weak as when he entered the hospital, but he is entered in the Municipal Tuberculosis Sanitorium at Otisville, New York, for treatment of pulmonary tuberculosis which he has, and his right lung is partially collapsed by artificial pneumothorax.

2. All the medical records, including the records of Manhattan General Hospital, Kingston Avenue Hospital, and the

Yorkville and Bay Ridge clinics of the New York City department of health, together with the X-ray photographs taken in said hospitals and at said clinics, were introduced into evidence by consent.

3. On behalf of petitioner, Dr. George R. Horton testified. He was one of the attending physicians who treated the petitioner at the Kingston Avenue Hospital, and he also testified as an expert urologist. He expressed his opinion that the accident of February 14th, 1936, caused an activation of a dormant tubercular condition, first in the right epididymis, and then spreading to the left seminal vesicle, vas deferens and epididymis, and that the active tubercular condition as it now existed was directly attributable to the accident. He stated that in his opinion, the petitioner had been discharged from the hospital as improved, but was in need of sanitorium treatment.

4. On behalf of petitioner also testified Dr. Israel Kaufman. He also treated petitioner as attending physician at the Kingston Avenue Hospital, and testified as an expert on tuberculosis. He expressed the opinion that prior to the accident, there was a latent or dormant tubercular infection, with a focus in the right lung, and that the trauma of February 14th, 1936, activated the tubercular condition in the right groin, and from there, through the blood stream, the infection spread and activated the pulmonary tuberculosis, causing the existing tuberculosis and disability. He stated that the petitioner had received artificial pneumothorax treatment at the Kingston Avenue Hospital, and that, in his opinion, the pneumothorax treatment should be continued, and that sanitorium treatment was required.

5. Dr. Joseph Koppel also testified on behalf of petitioner. He testified as to his examination, and in answer to a hypothetical question propounded to him, he stated that, in his opinion, the existing tuberculosis was the result of the accident of February 14th, 1936, by activation of a dormant tubercular condition.

6. On behalf of petitioner, lay witnesses testified as to their observance of the petitioner and the condition of health

previous to February 14th, 1936, and his decline in health thereafter, during 1936 and 1937.

7. On behalf of respondent, Dr. Watman testified as the original attending physician immediately following the accident. He testified as to his treatment and his reference of the case to Dr. Greenberger.

8. Dr. Greenberger testified, on behalf of respondent, as to his examination of the petitioner on April 14th, 1936; that he found a tuberculous epididymitis on the right side, and that he operated upon the petitioner on April 28th, 1936, removing the right epididymis and vas deferens. He also testified that he treated the petitioner after the operation, and discharged him from treatment in the latter part of July, 1936. He stated that when he discharged the petitioner, the petitioner's condition was the same as it was previous to the accident, and that there was no activation of any underlying or local condition by the accident.

9. On behalf of the respondent, Dr. Pollack also testified as to an examination made by him, and in answer to a hypothetical question, expressed his opinion that the petitioner had an underlying tubercular condition, with the focus in the right lung. Further answering that question, he testified that it was not a case of haematogenous tuberculosis, and that although the trauma to the particular location of the right groin might have activated a tubercular condition, yet, in his opinion, the generalized tubercular condition was not in any way affected by the accident and has progressed of itself, as a primary condition.

I have carefully considered all the testimony before me, and hereby determine and find as follows:

That the petitioner met with an accident on February 14th, 1936, when he was struck in the right groin with a heavy roll of cardboard, and that said accident arose out of and in the course of his employment with respondent; that the respondent had notice of the accident and rendered some medical treatment therefor; that there is a causal connection between that accident and the tubercular condition from which the petitioner is now suffering, and that the said

accident was the cause of petitioner's present condition. It appears that all of the doctors are in agreement that there was existent, before and at the time of the accident, a latent tubercular condition which was not disabling. It is my opinion, and I find as a fact, that the accident activated this dormant, underlying tubercular condition, both locally in the right groin, and generally, so that the tubercular activity spread in different parts of the body, including the left groin and the lung, and is now disabling the petitioner. I further find that the petitioner is still temporarily disabled and in need of medical treatment, as indicated by the medical testimony. A bill for hospital services rendered has been submitted in evidence, in the amount of $1,183. Without expressing an opinion as to the amount involved, I find as a fact that such medical attention rendered by and in the institutions and hospitals was necessary and reasonable, and that the respondent is responsible for such medical attention and all reasonable expenses thereof, and is also responsible for all reasonable expenses for further medical attention that shall be reasonably required. I further find that petitioner has been paid compensation for forty-four and four-sevenths weeks, the last payment of compensation being on February 9th, 1937, and that the compensation rate is $10.67 a week, based upon a weekly wage of $16.

It is, therefore, on this 12th day of April, 1938, ordered, that judgment be entered in favor of the petitioner and against the respondent for temporary disability until such time as the permanent disability, if any, can be fixed. I tentatively fix such date as November 1st, 1938, but if permanent disability can be fixed before or after such time, either party may bring the matter on to determine permanent disability. Payments on account of temporary disability shall commence from February 9th, 1937, and be paid to date, and for such period of time as designated above, at the rate of $10.67 per week.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

JOHN C. WEGNER,
*Deputy Commissioner.*